UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TAMA GROUP, | : |
| | : Civil Action No. 4:20-cv-2375 |
| Plaintiff, | : |
| v. | : |
| | : **JURY TRIAL DEMANDED** |
| GOSUN BUSINESS DEVELOPMENT CO. LTD. | : |
| and HAI'AN XIN FU YUAN OF | : |
| AGRICULTURAL SCIENCE AND | : |
| TECHNOLOGY CO., LTD., | : |
| | : |
| Defendants. | x |

## COMPLAINT

Plaintiff Tama Group ("Tama"), by its undersigned attorneys alleges the following for its complaint against Gosun Business Development Co. Ltd. ("Gosun"), and Hai'an Xin Fu Yuan of Agricultural Science and Technology Co., Ltd. ("XFY") (collectively "Defendants"), and state the following:

## PARTIES

1. Tama formerly known as Tama Plastic Industry,[1] is a partnership incorporated and registered under Israeli law that maintains its principal place of business at Kibbutz Mishmar HaEmek in Israel.

2. Upon information and belief, Defendant Gosun is a Canadian company and maintains its principal place of business at 12922 Oak Road, Grande Prairie, AB Canada.

3. Upon information and belief, Defendant XFY is a corporation organized under the laws of the Peoples Republic of China, and maintains its principal place of business at 59 Kaiyuan North Road, Haian, Nantong, Jiangsu 226600, China.

---

[1] On or about December 22, 2019, Tama Plastic Industry amended its partnership name to effectively change its name to Tama Group.

1

## JURISDICTION AND VENUE

4. This is an action for patent infringement under 35 U.S.C. § 271.

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1338(a) because this action is for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

6. Upon information and belief, both XFY and Gosun do business with and/or transact business with businesses in or within the United States, and in this District. XFY and Gosun have committed acts of infringement in this District.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

## BACKGROUND

8. Tama Group was founded in 1950. Since at least 1967, Tama has been developing, producing, and selling crop baling solutions and products for farmers. Tama's main products pertain to crop baling solutions and products, including net wraps, baler twines for hay, pallet and turf nets, and TamaWrap™ wrapping material (originally known as "Round Module Wrap" or "RMW®" but, for ease, will be referred to consistently in the Complaint only as "TamaWrap™").

9. In or around the summer of 2000, Tama Group and Deere & Company ("John Deere" or "Deere") embarked on a collaborative mission to simplify the mechanized cotton baling industry. Until that time, multiple machines and operations were needed to pick, separate, and cover cotton from the fields.

10. The work of Tama and Deere resulted in the integration of certain Deere equipment and TamaWrap™ (and related methods) that enabled a single machine to do what, until then, was impossible — harvest, separate, compress, and uniquely wrap cotton with a single

machine and on-board wraps.  The innovations of Tama and Deere revolutionized the mechanized cotton baling industry.  Indeed, this revolution gave rise to a new market in the United States and elsewhere for TamaWrap™ and Deere equipment utilizing TamaWrap™.

11. While 45% of global cotton production is still harvested manually in the United States, mechanized harvesting has been employed for many years.  Prior to these innovations, mechanized cotton baling required the use of many machines, additional personnel, and both tedious and less efficient operations to yield any cotton for sale to the market.  First, cotton was harvested using a separate basket cotton harvester.



12. Then, when the harvester was full, a second (and different) machine called a "boll buggy," which is connected to a tractor, would meet the harvester in the field.  The harvester would dump or spill the cotton into the boll buggy, which would then be carried to another location by the connected tractor.



13. Next, the tractor would dump or spill the cotton from the boll buggy into a third machine called a "module builder."



14. The module builder would then build large rectangular modules of cotton and transport them to another location.



15. The modules of cotton would then be partially covered on the top and sides with free tarps and then manually secured. This process not only utilizes more than six machines, even as many as nine or more, that are specialized for each of the steps, it also utilizes significant labor, as these various machines required at least four people, or more, who also must assist in cotton cleanup and module covering and management.



16. Among other problems, the previous method of cotton harvesting required multiple machines and numerous operators, and typically resulted in the loss of harvested cotton before and after ineffective wrapping and spill. Cotton damage and loss was particularly

prevalent when moving the large, partially covered modules, such as when moving the module onto a "module truck" for transport to a cotton gin. Further, since the bottom of the module was exposed to the ground, environmental elements such as rain could more easily contact the baled cotton.



## PATENT-IN-SUIT

17. Tama and Deere worked closely to test the design and durability of the wraps that would ultimately be used in the single harvester machine that would become known to the market as Deere's "On-Board Module Harvesters," including current Deere model numbers 7760, CP690, and CS690 ("Deere Machines").

18. Tama's work in designing its TamaWrap™ is embodied in United States Patent No. 6,787,209 ("the '209 Patent").

19. The '209 Patent, entitled "Wrapping Material with a Z-lock® System and Methods of Making and Using the Same," was duly and lawfully issued by the United States Patent and Trademark Office on September 7, 2004. A true and correct copy of the '209 Patent is attached as Exhibit A.

20. The '209 Patent generally discloses and claims wrapping material and methods of mechanized wrapping that may be utilized for wrapping cotton in a unique round module form.

The wrapping materials and methods of wrapping are used in combination with an all-in-one cotton harvesting and baling machine, such as the Deere Machine.

21. The '209 Patent discloses a wrapping material for use in organizing a harvested crop, such as cotton, into a round module. The wrapping material is organized as sequential wrapping portions positioned end-to-end, where a tail end of one wrapping portion and a leading end of a subsequent wrapping portion are arranged in a Z-lock® configuration where one end is folded on itself to form a V-fold and the other end overlays the V-fold. This Z-Lock® configuration conceals an adhesive positioned on a tail end area until it is ready to secure the formed bale (*i.e.*, the round module). This Z-Lock® configuration has proven to be advantageous because it provides, along with the Deere Machine, a far superior mechanized baling process that prevents substantial loss of cotton quantity and quality over traditional forms of mechanized harvesting.

22. Tama is the owner, by assignment, of the entire right, title, and interest in and to the '209 Patent and has all rights to sue for infringement of the '209 Patent.

## DEFENDANTS INFRINGING CONDUCT

23. Upon information and belief, XFY manufactures wraps (the "Accused Product") that infringe the '209 Patent. XFY manufactures the Accused Product in China and then sells its wrap with the intention to import the wrap into the United States through a third-party conduit. On information and belief one such third-party conduit is Defendant Gosun.

24. Upon information and belief, the Accused Product is meant to be a substitute for TamaWrap™ that works with Deere machines.

25. The Accused Product includes a first wrapping portion and a second wrapping portion, with at least one Z-lock® portion bonding the first and second wrapping portions at their

respective lateral ends. The Z-lock® portion holds together and releases the first and second portions during a wrapping cycle. A picture demonstrating infringement by the Accused Product is as follows:



26. Upon information and belief, Gosun is the importer/U.S. distributor of the Accused Product.

27. On or around October 2, 2018, Shoppa's Farm Supply, a Deere dealer located in El Campo, Texas, ordered Replacement Cotton picker Wrap (Demo) for 7760/CP690 from Gosun on behalf of Smith Tractor Company Inc., another Deere dealer located in Alabama.

28. Upon receipt of the Accused Product by Shoppa's Farm Supply, the Accused Product was inspected by a Tama representative and shipped to Tama in Israel for further inspection directly from Shoppa's Farm Supply.

29. The Accused Product that was sold by Gosun to Shoppa's Farm Supply includes the XFY logo and/or label on it in at least two different locations:



30. Upon information and belief, XFY and Gosun encourage U.S. customers to use the Accused Product in an infringing manner at least by promoting the product for use with Deere cotton baling equipment.

31. Upon information and belief, in order for XFY to design, develop and manufacture the Accused Product it is aware of how the Deere Machines operate in combination

with TamaWrap™. It has therefore seen, inspected, and analyzed TamaWrap™ in order to engineer the Accused Product.

32. Tama marks the TamaWrap™ on its website and on its packaging material so that the '209 Patent number is prominently displayed providing notice to all.

33. Given XFY's inspection and analysis of TamaWrap™, XFY is aware of and knows that TamaWrap™ is marked as being covered by the '209 Patent. XFY knows or should have known that its Accused Product would infringe the '209 Patent.

34. Based on XFY's knowledge of the '209 Patent, XFY also knows that when the end user uses its Accused Product for its intended purpose in a Deere Machine, the end user will infringe the '209 Patent.

35. Upon information and belief, Gosun knew of the '209 Patent. In particular, Michael Shang, who is believed to be a representative of Gosun, uploaded a video to YouTube® on September 30, 2020, titled "2018 Replacement cotton wrap for all John Deere Baler Cotton Picker 7760/CP690." The description for the video includes a statement that the Accused Product has "Excellent quality and reasonable price compared to the JD TAMA wrap."

36. Gosun therefore knows or should have known that the Accused Product it sells infringes the '209 Patent.

## FIRST CLAIM FOR RELIEF

37. All of the foregoing allegations are restated and incorporated by reference as though fully set forth herein.

38. On information and belief, Defendant XFY is infringing, and will continue to infringe, at least claims 1, 2, 4-16, 18, 28, 32, 33, and 35-45 of the '209 Patent, in violation of 35 U.S.C. § 271(a).

39. XFY manufactures, sells, offers for sale, and/or exports into the United States the Accused Product in accordance with at least claim 1 of the '209 Patent, as each wrap has a first wrapping portion, a second wrapping portion, and at least one Z-lock® portion bonding said first and second wrapping portions at their respective lateral ends for holding together and releasing said first and second portions during a wrapping cycle.

40. On information and belief, Defendant XFY has induced and continues to actively induce others, such as users of the Accused Product, to directly infringe at least claims 1 and 32 of the '209 Patent, in violation of 35 U.S.C. § 271(b).

41. Upon information and belief, XFY intentionally encourages, aids, and abets third parties, such as users of the Accused Product, to directly infringe at least claims 1 and 32 of the '209 Patent, and with knowledge of the third party's infringement, or at least willful blindness as to the third party's infringement.

42. XFY lacks a justifiable belief that it does not infringe the '209 Patent or that any claim of the '209 Patent is invalid, and has acted with objective recklessness in its infringing activity.

43. Tama has sustained damages and suffered irreparable harm as a consequence of XFY's infringement, and will continue to do so, unless XFY's infringement is enjoyed and Tama is compensated with an award of damages.

44. All acts of infringement by XFY were and continue to be willful and deliberate. This action, therefore, is "exceptional" within the meaning of 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF

45. All of the foregoing allegations are restated and incorporated by reference as though fully set forth herein.

46. On information and belief, Defendant Gosun is infringing, and will continue to infringe at least claims 1, 2, 4-16, 18, 28, 32, 33, and 35-45 of the '209 Patent, in violation of 35 U.S.C. § 271(a) by selling, offering for sale, and/or importing into the United States the Accused Product that infringes at least claim 1 of the '209 Patent.

47. On information and belief, Defendant Gosun has induced and continues to actively induce others, such as users of the infringing wraps, to directly infringe at least claims 1 and 32 of the '209 Patent, in violation of 35 U.S.C. § 271(b).

48. Upon information and belief, and given Gosun's knowledge of the '209 Patent, Gosun intentionally encourages, aids, and abets third parties, such as users of the Accused Product, to directly infringe at least claims 1 and 32 of the '209 Patent, and with knowledge of the third party's infringement, or at least willful blindness as to the third party's infringement.

49. Gosun lacks a justifiable belief that it does not infringe the '209 Patent or that any claim of the '209 Patent is invalid, and has acted with objective recklessness in its infringing activity.

50. Tama has sustained damages and suffered irreparable harm as a consequence of Gosun's infringement, and will continue to do so unless Gosun's infringement is enjoyed and Tama is compensated with an award of damages.

51. All acts of infringement by Gosun were and continue to be willful and deliberate. This action, therefore, is "exceptional" within the meaning of 35 U.S.C. § 285.

**RELIEF REQUESTED**

WHEREFORE, Tama demands judgment as follows:

A.  An order adjudging XFY and Gosun to have infringed the '209 Patent;

B.      An award of damages adequate to compensate Tama for the infringement by XFY and Gosun along with prejudgment and postjudgment interest, but in no event less than a reasonable royalty, such damages to be trebled pursuant to the provision of 35 U.S.C. § 284;

C.      An award of Tama's reasonable attorney fees and expenses pursuant to the provisions of 35 U.S.C. § 285;

D.      An award of Tama's costs; and

E.      Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by a jury on all issues so triable.

Respectfully submitted,

Dated: July 6, 2020

*Attorneys for Plaintiff Tama Group*

**OF COUNSEL**
Aaron S. Eckenthal*
Christian E. Samay*
Brian R. Tomkins*
(*_pro hac vice_ applications forthcoming)
LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
20 Commerce Drive
Cranford, NJ  07016
Tel:   908.654.5000
Fax:  908.654.7866
aeckenthal@lernerdavid.com
csamay@lernerdavid.com
btomkins@lernerdavid.com
litigation@lernerdavid.com

 s/ *Travis R. Wimberly*
Travis R. Wimberly
Attorney-in-Charge
Texas Bar No. 24075292
S.D. Tex. Bar No. 1804532
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, TX  78702
Tel:  512.322.5200
Fax:  512.322.5201
twimberly@pirkeybarber.com